## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ADRIENNE HALBERSTAM,

        Plaintiff,

        v.

CHEMOCENTRYX, INC., GEOFFREY M.
PARKER, JAMES L. TYREE, THOMAS A.
EDWARDS, RITA I. JAIN, SUSAN M.
KANAYA, THOMAS J. SCHALL, JOSEPH
M. FECZKO, DAVID E. WHEADON, and
JENNIFER L. HERRON,

        Defendants.

---------------------------------------------------------------

Case No.

COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiff Adrienne Halberstam ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action against ChemoCentryx, Inc. ("ChemoCentryx" or the "Company") and the members of ChemoCentryx's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by Amgen Inc. ("Amgen") through Amgen's subsidiary Carnation Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On August 3, 2022, ChemoCentryx and Amgen entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which ChemoCentryx stockholders will receive $52.00 in cash for each share of ChemoCentryx common stock that they own.

3.      On September 14, 2022, ChemoCentryx filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction.  The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes

whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, the Company's stock trades on the Nasdaq Global Select Market, which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of ChemoCentryx.

9.      Defendant ChemoCentryx is a Delaware corporation, with its principal executive offices located at 835 Industrial Road, Suite 600, San Carlos, California 94070.  ChemoCentryx's common stock trades on the Nasdaq Global Select Market under the ticker symbol "CCXI."

10.     Defendant Geoffrey M. Parker is, and has been at all relevant times, a director of the Company.

11.     Defendant James L. Tyree is, and has been at all relevant times, a director of the Company.

12.     Defendant Thomas A. Edwards is, and has been at all relevant times, a director of the Company.

13.     Defendant Rita I. Jain is, and has been at all relevant times, Executive Vice President, Chief Medical Officer, and a director of the Company.

14.     Defendant Susan M. Kanaya is, and has been at all relevant times, Executive Vice President, Chief Financial and Administrative Officer, Secretary, and a director of the Company.

15.     Defendant Thomas J. Schall is, and has been at all relevant times, Chief Executive Officer, Chairman, and a director of the Company.

16.     Defendant Joseph M. Feczko is, and has been at all relevant times, a director of the Company.

17.     Defendant David E. Wheadon is, and has been at all relevant times, a director of the Company.

18.     Defendant Jennifer L. Herron is, and has been at all relevant times, a director of the Company.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants," and together with ChemoCentryx, "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.  Background of the Company**

20.     ChemoCentryx is a biopharmaceutical company that focuses on the development and commercialization of new medications for inflammatory disorders, autoimmune diseases, and cancer in the United States.  It offers TAVNEOS (avacopan), an orally administered selective C5aR inhibitor for the treatment of adult patients with severe active anti-neutrophil cytoplasmic autoantibody-associated vasculitis.  The company also develops TAVNEOS for the treatment of patients with severe hidradenitis suppurativa, as well as patients with complement 3 glomerulopathy, and lupus nephritis.  In addition, ChemoCentryx has early-stage drug candidates that target chemoattractant receptors in other inflammatory and autoimmune diseases and in cancer.

**B.  The Proposed Transaction**

21.    On August 4, 2022, ChemoCentryx and Amgen issued a joint press release

announcing the Proposed Transaction stating, in pertinent part:

> THOUSAND OAKS, Calif. and SAN CARLOS, Calif., Aug. 4, 2022
> /PRNewswire/ -- Amgen (NASDAQ: AMGN) and ChemoCentryx, Inc.,
> (NASDAQ: ChemoCentryx), a biopharmaceutical company focused on orally
> administered therapeutics to treat autoimmune diseases, inflammatory disorders
> and cancer, today announced that the companies have entered into a definitive
> agreement under which Amgen will acquire ChemoCentryx for $52 per share in
> cash, representing an enterprise value of approximately $3.7 billion.
>
> "The acquisition of ChemoCentryx represents a compelling opportunity for Amgen
> to add to our decades-long leadership in inflammation and nephrology with
> TAVNEOS, a transformative, first-in-class treatment for ANCA-associated
> vasculitis," said Robert A. Bradway, chairman and chief executive officer at
> Amgen.  "We are excited to join in the TAVNEOS launch and help many more
> patients with this serious and sometimes life-threatening disease for which there
> remains significant unmet medical need.  We also look forward to welcoming the
> highly skilled team from ChemoCentryx that shares our passion for serving patients
> suffering from serious diseases."
>
> "A fierce commitment to improving human lives is the bond that unites Amgen and
> ChemoCentryx today," said Thomas J. Schall, Ph.D., president and chief executive
> officer of ChemoCentryx.  "Last year, after 25 years of proud history, we at
> ChemoCentryx delivered on our founding promise with the approval of TAVNEOS
> for patients with anti-neutrophil cytoplasmic autoantibody-associated vasculitis
> (ANCA-associated vasculitis).  It is an honor to now join Amgen's great mission,
> and together begin a bright new era bringing landscape-shaping medicines like
> TAVNEOS to those who will benefit most."
>
> TAVNEOS is an orally administered selective complement component 5a receptor
> inhibitor.  It was approved by the U.S. Food and Drug Administration in October
> 2021 as an adjunctive treatment for adult patients with severe active ANCA-
> associated vasculitis, specifically granulomatosis with polyangiitis (GPA) and
> microscopic polyangiitis (MPA) (the two main forms of ANCA-associated
> vasculitis), in combination with standard therapy.
>
> ANCA-associated vasculitis is an umbrella term for a group of multi-system
> autoimmune diseases with small vessel inflammation.  Inflamed vessels may
> rupture or become occluded giving rise to a broad array of clinical symptoms and
> signs related to a systemic inflammatory response which may result in profound
> injury and dysfunction in the kidneys, lungs and other organs.
>
> Amgen is a leader in inflammation and nephrology.  The company's inflammation
> portfolio includes Otezla®, ENBREL®, TEZSPIRE®, AMGEVITA™ (a

biosimilar to HUMIRA®), RIABNI™ (a biosimilar to Rituxan®), and AVSOLA® (a biosimilar to REMICADE®). Amgen's pipeline includes four innovative Phase 2 inflammation medicines – efavaleukin alpha for systemic lupus erythematosus and ulcerative colitis, ordesekimab for celiac disease, rocatinlimab for atopic dermatitis and rozibafusap alfa for systemic lupus erythematosus – as well as ABP 654, a biosimilar to STELARA® that is in Phase 3 development. Amgen's nephrology portfolio includes EPOGEN®, Aranesp®, Parsabiv® and Sensipar®.

U.S. sales of TAVNEOS in the first quarter of 2022, the first full quarter of sales, were $5.4 million. TAVNEOS is also approved in major markets outside the U.S., including the European Union and Japan. Vifor Fresenius Medical Care Renal Pharma Ltd. will retain exclusive rights to commercialize TAVNEOS outside the U.S., except in Japan where Kissei Pharmaceutical Co., Ltd. holds commercialization rights and Canada where Otsuka Canada Pharmaceutical holds commercialization rights.

In addition to TAVNEOS, ChemoCentryx has three early-stage drug candidates that target chemoattractant receptors in other inflammatory diseases and an oral checkpoint inhibitor for cancer.

The transaction has been unanimously approved by each company's board of directors. The transaction is subject to ChemoCentryx stockholder approval, regulatory approvals and other customary closing conditions, and is expected to close in the fourth quarter of 2022.

Amgen management will comment further on the ChemoCentryx transaction on its Q2 earnings call today.

PJT Partners acted as financial advisor to Amgen and Wachtell, Lipton, Rosen & Katz is serving as its legal advisor. Goldman Sachs & Co. LLC acted as financial advisor to ChemoCentryx, and Latham & Watkins LLP is serving as its legal advisor.

**C. False and Misleading Statements and/or Material Omissions in the Proxy Statement**

22.    On May 17, 2021, Defendants filed the materially incomplete and misleading Proxy Statement with the SEC and disseminated it to ChemoCentryx's stockholders. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

23.    Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain

any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

24.     First, the Proxy Statement omits material information or provides materially misleading information regarding the Company's financial projections.  Specifically, the Proxy Statement fails to disclose the line items underlying the Company's: (i) EBIT; and (ii) Unlevered Free Cash Flow.

25.     Additionally, the Proxy Statement fails to disclose the specific probability adjustments applied to the Company's prospective financial information.

26.     Courts have routinely held management's financial projections are among the most important information a stockholder can have when evaluating the proposed consideration in a merger.  See Brown v. Brewer, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) (denying defendants' motion for summary judgment on the issue of management's financial projections, the court held that "A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. [T]here is a substantial likelihood that a reasonable shareholder would consider it important in making his decision.") (brackets in original) (internal quotation marks omitted); In re Netsmart Techs., Inc., S'holders Litig., 924 A.2d 171, 203 (Del. Ch. 2007) (company's financial projections "are probably among the most highly-prized disclosures by investors"); In re Staples, Inc. S'holders Litig., 792 A.2d 934, 958 n.44 (Del. Ch. 2001) ("One suspects that the projections are the information that most stockholders would find the most useful to them.").  See also SEC v. Nat'l Student Mktg. Corp., 457 F. Supp. 682, 707 (D.D.C. 1978)

(quoting *Republic Technology Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 547 (2d Cir. 1973)) ("In a merger transaction such as that presented here, accurate financial information is necessary in order for a shareholder fairly to be able to vote.").

27.     Second, the Proxy Statement omits material information regarding the financial analyses performed by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman").

28.     With respect to Goldman's Illustrative Discounted Cash Flow Analysis-TAVNEOS AAV Only Cash Flows and Illustrative Discounted Cash Flow Analysis-Aggregate Cash Flows, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 11.5% to 13.5%; (ii) ChemoCentryx's terminal value; (iii) the estimated benefits of ChemoCentryx's net operating losses; and (v) the number of fully diluted shares of ChemoCentryx common stock.

29.     Third, The Proxy Statement fails to disclose material information relating to the provisions in the confidentiality agreement the Company entered into with a party identified in the Proxy Statement as Party A.  Specifically, the Proxy Statement fails to disclose whether the confidentiality agreement with Party A contains a standstill agreement that is still in effect and whether the standstill provision precludes Party A from making a topping bid for the Company.

30.     The omission of the above-referenced material information renders the following sections of the Proxy Statement false and misleading: "Unaudited Prospective Financial Information," "Opinion of Goldman Sachs & Co. LLC" and "Background of the Merger."

## COUNT I

### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

31.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

33.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act.  Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction.  The Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

35.     By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

36.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## <u>COUNT II</u>

### For Violations of Section 20(a) of the Exchange Act<br><u>Against the Individual Defendants</u>

37.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth in full.

38.     The Individual Defendants acted as controlling persons of ChemoCentryx within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of ChemoCentryx, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

39.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

41.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

42.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' conduct, ChemoCentryx's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to ChemoCentryx stockholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Dated:  September 16, 2022                          Respectfully submitted,

                                    By   /s/ *Shallom Engel*
                                         Shallom Engel
                                         **Engel Law PLLC**
                                         2329 Nostrand Avenue, Suite 100
                                         Brooklyn, NY 11210
                                         Telephone: (718) 880-8595
                                         Email: shallom@engellawpllc.com

                                         *Attorneys for Plaintiff*